UNITED STATES of America,
Plaintiff-Appellee,

v.

Sarah BARKER, Defendant-Appellant.

No. 83–7252.

United States Court of Appeals,
Eleventh Circuit.

July 5, 1984.

David B. Byrne, Jr., John M. Bolton, III, Montgomery, Ala., for defendant-appellant.

Kent B. Brunson, Asst. U.S. Atty., Montgomery, Ala., for plaintiff-appellee.

Before RONEY and JOHNSON, Circuit Judges, and MORGAN, Senior Circuit Judge.

RONEY, Circuit Judge:

Defendant Sarah Barker, a bank employee, was convicted under 18 U.S.C.A. § 656 of misapplying and converting to her own use nine $100 Citicorp Traveler's Checks, and was sentenced to three years' probation subject to restitution in the amount of $900.00. Barker appeals her conviction on grounds that (1) the evidence was insufficient to support a conviction; (2) the instruction to the jury on aiding and abetting was erroneous; (3) the court's substitution of an alternate juror after deliberations had begun was error; and (4) the court erroneously admitted lay witness testimony on the question of handwriting identification. We affirm.

The traveler's checks at issue were discovered missing from the South Trust Bank, formerly Southern Bank, in Montgomery, Alabama, during a routine internal audit performed at the end of June 1982. The checks were negotiated in stores and restaurants in Clanton, Alabaster, Hoover and Vestavia, Alabama, under the name "Sharon Barnes" between July 2 and July 5, 1982. Barker's chief contentions were that she did not take the checks, nor was she physically present at the locations where the checks were presented.

Although there was no direct evidence that Barker took the traveler's checks, viewed in the light most favorable to the Government, the circumstantial evidence was adequate to permit a reasonable trier of fact to find guilt beyond a reasonable doubt. *See United States v. Bell,* 678 F.2d 547 (5th Cir. Unit B 1982). Defendant Barker, as a loan officer of the bank, had access to the areas where the traveler's checks were kept. Two of her co-workers testified that the handwriting on the traveler's checks was similar to or recognizable as Barker's. An F.B.I. Documents Examiner who compared the handwriting on the checks with the known handwriting of the defendant testified that the signatures in question were written by Barker. While this testimony was disputed by an expert witness called by the defense, the jury could reasonably have concluded that the handwriting on the traveler's checks was that of the defendant. Each juror was permitted to examine the handwriting exhibits and to draw conclusions regarding similarities and differences.

Barker contends the aiding and abetting instruction given to the jury represented an improper statement of the law and was not supported by the facts. At trial, however, defendant expressly objected "[n]ot to the content of the charge, but the fact that one was given." The defendant cannot raise on appeal an objection to an instruction which she failed to raise below. Fed.R.Crim.P. 30.

An aiding and abetting offense occurs when a person "willfully associates himself in some way with the criminal venture and willfully participated in it as he would in something he wished to bring about." *United States v. Phillips,* 664 F.2d 971, 1010 (5th Cir. Unit B 1981), *cert. denied,* 457 U.S. 1136, 102 S.Ct. 2965, 73 L.Ed.2d 1354 (1982). Several of the witnesses who observed the checks being negotiated testified that two persons were present. The testimony indicated that at least in some instances the checks were not actually negotiated by the defendant. The court properly instructed the jury that one

**1282**

who "aids, abets, induces or procures" the commission of the offense against the United States is punishable as a principal.

■ Defendant's third claim presents a close question. Approximately twenty minutes after the jury began its deliberations, the court called the jury back into the courtroom and replaced juror Vaughn with an alternate juror. Juror Vaughn was replaced because of an incident observed and recounted to the court by a Deputy United States Marshal. When juror Vaughn stepped from the elevator on the way to begin deliberations, she went over to where the defendant was standing, placed her hand on the defendant's shoulder, smiled, and moved on. No conversation occurred. Vaughn subsequently explained her action as a sympathetic gesture unrelated to her belief as to the defendant's innocence or guilt.

Over the objections of defense counsel, the court granted the Government's motion to excuse Vaughn from deliberating on the ground that her conduct indicated she was not impartial and may have made her decision before deliberations began. After sending Vaughn out of the courtroom, the trial judge informed the remaining jurors that

> we have to be super cautious as in both the qualifications of jurors and in any sensitive question which may indicate that a juror should have been disqualified. There is a possibility that Mrs. Vaughn should have been disqualified initially. We can't be sure about that, and possibly she even can't tell us. We don't want to do anything to hurt a juror's feelings or to make it appear that a juror is doing anything improper unless we are absolutely sure. But our first duty is to the parties in the case. And if anything happens which may indicate that a juror is prejudiced in the case or is in any way involved to the extent that might indicate that that juror should not hear the case, should not participate in the deliberations, then it is my duty to excuse that juror from deliberations and to let another juror serve.

In response to the court's inquiry, all of the jurors indicated that they would be able to redeliberate impartially. The court then instructed the jury to begin deliberations anew. After approximately two hours and five minutes, the reconstituted jury returned a verdict of guilty.

Barker contests the procedure employed by the court, and requests a new trial on grounds that (1) the court abused its discretion by failing to hold an evidentiary hearing prior to the removal of juror Vaughn; (2) the court excused Vaughn on a basis which subsequently was shown to be unsupported in fact; (3) the court erred in failing to hold a full hearing regarding communications between the Deputy Clerk, the Deputy United States Marshal, or juror Vaughn and the other members of the jury; (4) the court's instructions to the remaining jurors about juror Vaughn's excusal raised questions about misconduct which could only have been harmful to the defendant; (5) the Government failed to prove that the juror contact with the defendant and the court's subsequent instructions did not affect the jury; and (6) the court failed to make a specific finding of no prejudice.

This Court dealt extensively with similar situations in *United States v. Phillips*, 664 F.2d 971, 990–997 (5th Cir. Unit B 1981), and in *United States v. Kopituk*, 690 F.2d 1289, 1308 (11th Cir.1982), *cert. denied,* —— U.S. ——, 103 S.Ct. 3542, 77 L.Ed.2d 1391. We held that the issue is whether a defendant is prejudiced by the substitution of an alternate juror after jury deliberations have begun. These decisions turn on whether the procedural precautions taken by a trial court obviate the danger of prejudice to a defendant and overcome the concerns of the draftsmen of Fed.R.Crim.P. 24(c). That rule provides for the replacement with alternate jurors "prior to the time the jury retires to consider its verdict." *Id.* at 993.

The trial court here meticulously met the demands of *Phillips*. In light of the considerable discretion afforded a trial judge in the dismissal of jurors on grounds of prejudice, misconduct, or other impairment

of a juror's ability to perform his duties, *see United States v. Apodaca,* 666 F.2d 89 (5th Cir.), *cert. denied,* 459 U.S. 823, 103 S.Ct. 53, 74 L.Ed.2d 58 (1982); *United States v. Giarratano,* 622 F.2d 153 (5th Cir.1980); *United States v. Dominguez,* 615 F.2d 1093 (3d Cir.1980), and in light of the fact that it is undisputed that the incident in question did, in fact, occur, the court did not err in deciding that Juror Vaughn should be excused. The judge ascertained that the jury could proceed on an impartial basis and begin its deliberations over again after the addition of the alternate juror. The court carefully explained the excusal to the jurors in a non-prejudicial manner. The judge was not accusatory and did not implicate the defendant in any misconduct. The jurors were instructed to begin anew. No juror indicated any reservations about his ability to do so. The substituted alternate juror participated fully in the more than two hours of deliberations which followed. All of these precautions obviated the danger of undue prejudice. The substitution procedure utilized by the court did not deprive the defendant of her right to full consideration of her case by an impartial jury panel. Although no specific finding was made regarding prejudice, it is quite obvious the trial court determined that defendant would not be prejudiced by the substitution. Although there is nothing in the record to indicate where the alternate juror was between the time she was excused and the time she was recalled to serve on the jury, there is no suggestion that she did anything or talked to anyone that in any way impaired her ability to serve as an impartial juror.

We note there are cases in other circuits which have refused to permit substitutions once the jury has retired. *See, e.g., United States v. Lamb,* 529 F.2d 1153, 1156 n. 3 (9th Cir.1975) (en banc) ("When, as here, an alternate juror is permitted to participate in the jury's deliberations after the original jury has retired for deliberations, the violation of the plain prohibition of [Rule 24(c)] is so patently impermissible that the 'possibility of prejudice' ... is manifest".). *See*

*also* 2 C. Wright, *Federal Practice and Procedure* § 388, at 52 (1969) ("... it is reversible error, even though defendant may have consented, to permit an alternate to stay with the jury after they have retired to deliberate or to substitute an alternate after deliberations have begun."). The careful consideration of the issue in *Phillips* would appear to have brought a better decision on the issue, however, and, in any event, this Court is bound by *Phillips. See Bonner v. City of Prichard,* 661 F.2d 1206 (11th Cir.1981).

Barker's final claim concerns the court's admission of the testimony of Della Holly and Eunice Sherril, two lay witnesses and co-workers of the defendant, regarding their opinions as to the handwriting on the traveler's checks. Both witnesses testified they were familiar with the defendant's handwriting and stated that in their opinions it matched or was similar to the handwriting on the checks. Defendant contends that the court erred in admitting this testimony over objection because (1) witness Holly's conclusion that the handwriting on the checks was "similar to Sarah's" was too equivocal to be admissible under Fed.R. Evid. 901(b)(3), and (2) the Government failed to give notice of the result of the handwriting comparisons made by these witnesses when requested to do so pursuant to defendant's Fed.R.Crim.P. 16 discovery motion.

■ The district court did not err in admitting this testimony under Fed.R.Evid. 701, which provides,

[i]f the witness is not testifying as an expert, his testimony in the form of opinions or inferences is limited to those opinions or inferences which are (a) rationally based on the perception of the witness and (b) helpful to a clear understanding of his testimony or the determination of a fact in issue,

and Fed.R.Evid. 901(b)(2), which allows for the admission of "non-expert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation." As for the Rule 16 claim,

the district court properly ruled that the Government provided adequate notice of the results of the handwriting comparison in the form of an FBI Form 302 which stated that certain bank employees had identified the signatures on the traveler's checks as the handwriting of the defendant. The fact that no names were furnished does not require a finding of noncompliance with the Rule 16 notice requirements.

AFFIRMED.