2009 WY 72

**Nathan L. WIMBLEY, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–08–0174.**

Supreme Court of Wyoming.

June 2, 2009.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel.

Representing Appellee: Bruce A. Salzburg, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Assistant Attorney General.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

BURKE, Justice.

[¶ 1]   Nathan Wimbley was convicted and sentenced on one felony count of obtaining property by false pretenses in violation of Wyo. Stat. Ann. § 6–3–407(a)(i) (LexisNexis 2007).   On appeal, he asserts that the district court improperly admitted evidence of other misconduct that should have been excluded pursuant to W.R.E. 404(b), and evidence that was unduly prejudicial and should have been excluded pursuant to W.R.E. 403.   We will affirm.

## ISSUES

[¶ 2]   Mr. Wimbley presents these appeal issues:

1.   Did the trial court err in its overbroad admission of evidence under W.R.E. 404(b)?

2.   Did the trial court err in admission of argument and evidence that Mr. Wimbley was on parole for another offense and that he was incarcerated in Yuma County, Colorado?

## FACTS

[¶ 3] Joseph Lex Madden is one of the owners of Torrington Livestock Markets, LLC. According to Mr. Madden's trial testimony, he received a telephone call from a man who identified himself as Nathan Wimbley. Mr. Wimbley said that he was a broker and dealer in pipe, and that he had pipe in Denver he wanted to sell. As it happened, Mr. Madden was interested in purchasing some pipe, and agreed to purchase one semi-truck load of pipe, or 9,000 feet, for 80¢ per foot, or $7,200. Mr. Madden believed this was a good deal, as he thought that the going price for such pipe was $1.00 to $1.25 per foot. Mr. Wimbley indicated that, because he had never done business with Torrington Livestock Markets before, he wanted the $7,200 wired to him in advance. Mr. Madden wired the money from his bank in Torrington, Wyoming, to Mr. Wimbley's account at a bank in Cahokia, Illinois.

[¶ 4] The pipe was supposed to be delivered the following day. It was not. Mr. Madden tried to contact Mr. Wimbley, but Mr. Wimbley did not answer the phone. Mr. Madden left messages, but Mr. Wimbley never returned his calls. Mr. Madden then asked his Special Projects Manager, Doug Chamberlain, to look into the situation.

[¶ 5] Mr. Wimbley answered Mr. Chamberlain's phone call. Asked about the pipe, Mr. Wimbley said that there had been problems arranging for its transportation to Torrington. He said that he could deliver the pipe within a month. Mr. Chamberlain said that was not acceptable, and asked Mr. Wimbley to return the $7,200. Mr. Wimbley agreed to return the money, but he never did, nor did he ever deliver the pipe. Mr. Chamberlain contacted law enforcement authorities, and Mr. Wimbley was charged with obtaining property by false pretenses, in violation of Wyo. Stat. Ann. § 6–3–407(a)(i).[1]

[¶ 6] More than a month before trial, Mr. Wimbley's counsel filed a "Demand Pursuant to Rule 404(b)," seeking notice of the State's intent to introduce any evidence under W.R.E. 404(b). The State provided its notice nine days later. It listed two different types of evidence it intended to offer at trial.

[¶ 7] The first was testimony from several persons to the effect that Mr. Wimbley had offered to sell them either pipe or fertilizer, and had requested payment in advance. Some of them had made the advance payment, but never received the product. In connection with this testimony, the State also intended to offer testimony from a representative of Mr. Wimbley's bank that when Mr. Wimbley's account was credited with these advance payments, Mr. Wimbley immediately withdrew the money and depleted the account. The State contended that this evidence demonstrated "a plan, scheme and course of conduct between [Mr.] Wimbley and his 'customers,'" and was "relevant to show [Mr.] Wimbley's false pretenses and intent to defraud."

[¶ 8] The second was testimony from Mr. Wimbley's parole officer in Illinois, who could provide identifying information concerning Mr. Wimbley. This evidence was needed to establish identity, the State asserted, because Mr. Madden and Mr. Chamberlain had only talked to Mr. Wimbley by telephone, and had never met with him in person. Shortly after filing the written notice, the State notified counsel for Mr. Wimbley that it also intended to offer testimony from an official from the jail in Yuma County, Colorado, where Mr. Wimbley had been incarcerated. This testimony was also offered to establish Mr. Wimbley's identity, and to provide foundation for recordings of telephone calls Mr. Wimbley had made from the jail.

[¶ 9] Nearly a month before trial, the district court held a hearing on pending motions and on the State's intended use of evidence pursuant to W.R.E. 404(b). After thorough consideration, it ruled that the State's evidence was admissible. The evidence was

1. Wyo. Stat. Ann. § 6–3–407(a) provides, in relevant part, that "A person who knowingly obtains property from another person by false pretenses with intent to defraud the person is guilty of: (i) A felony punishable by imprisonment for not more than ten (10) years, a fine of not more than ten thousand dollars ($10,000.00), or both, if the value of the property is one thousand dollars ($1,000.00) or more."

admitted at trial, and Mr. Wimbley was convicted. He filed this timely appeal.

### STANDARD OF REVIEW

■ [¶ 10] We review this case for abuse of discretion.

A trial court's decision on the admissibility of evidence is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. "[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal." *Sanchez v. State*, 2006 WY 116, ¶ 20, 142 P.3d 1134, 1140 (Wyo. 2006).

*Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007).

### DISCUSSION

*Testimony from others who had dealings with Mr. Wimbley*

■ [¶ 11] At trial, the State presented testimony from four persons whose experiences with Mr. Wimbley were similar to Mr. Madden's. Jay Bowers testified that someone identifying himself as Nathan Wimbley contacted him with an offer to sell pipe. Mr. Bowers wired $4,072 to Mr. Wimbley's bank account. Dana Barrow, Mr. Bowers' employee, testified that she was the person who made the wire transfer. The pipe was never delivered to Mr. Bowers. Charles Warner testified that he received several faxes from a man calling himself Nathan Wimbley, offering to sell pipe. Mr. Wimbley requested a wire transfer of money in advance, but Mr. Warner refused. Mr. Wimbley contacted Mr. Warner several times, trying to convince him to make the advance payment. Don Andrews testified that he received an e-mail message from an individual identifying himself as Nathan Wimbley, offering to sell guardrail and pipe. Mr. Wimbley asked for money in advance, and Mr. Andrews sent the money. The pipe and guardrail were never delivered.

■ [¶ 12] Mr. Wimbley contends that this evidence should have been excluded from trial pursuant to W.R.E. 404(b), which reads as follows:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

A core principle of this rule is that a defendant in a criminal case "should not be convicted because he is an unsavory person, nor because of past misdeeds, but only because of his guilt of the particular crime charged." 1 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 4:21, at 691–92 (3d ed.2007). For that reason, evidence of other crimes, wrongs, or acts is excluded when "its only purpose is to show a defendant has a disposition to commit crimes." *Bromley v. State*, 2007 WY 20, ¶ 9, 150 P.3d 1202, 1207 (Wyo.2007).

■ [¶ 13] Such evidence is admissible, however, if it serves some other, proper purpose. *Leyva*, ¶ 27, 165 P.3d at 454. When deciding whether to admit such evidence, the trial court must consider the following: (1) Is the evidence offered for a proper purpose? (2) Is the evidence relevant? (3) Is the probative value of the evidence substantially outweighed by its potential for unfair prejudice? (4) Upon request, should the jury be given a limiting instruction? *Blakeman v. State*, 2004 WY 139, ¶ 31, 100 P.3d 1229, 1237 (Wyo.2004).

[¶ 14] On appeal, as before the district court, the State contends that this evidence was admitted for a proper purpose. To convict a defendant of obtaining property by false pretenses, the State must prove beyond a reasonable doubt that the defendant knowingly obtained property from another, by false pretenses, with intent to defraud. Wyo. Stat. Ann. § 6–3–407(a). To establish that Mr. Wimbley had given Mr. Madden false information and intended to defraud him, the State offered the testimony of Mr. Bowers, Mr. Warner, and Mr. Andrews that Mr. Wimbley had offered to sell them pipe and asked for money in advance, but did not provide the pipe. This testimony was relevant because it made it less likely that Mr.

Wimbley had inadvertently or accidentally failed to deliver the pipe to Mr. Madden, and more likely that he intended to defraud Mr. Madden. It was offered for the proper purposes of showing the falsity of Mr. Wimbley's statements to Mr. Madden and Mr. Chamberlain, and of showing Mr. Wimbley's intent, plan, and lack of mistake.

■ [¶ 15]  On appeal, Mr. Wimbley concedes that, given the potential defenses of "mistake or accident, calling one individual to testify about a course of dealings with Mr. Wimbley might have been relevant." His argument, however, is that it was unnecessary to call more than one such witness, and calling several to talk about past transactions was unnecessarily cumulative and highly prejudicial. This is particularly true, he asserts, because in addition to these four individuals, the jury also heard from the bank representative about Mr. Wimbley depleting his bank account of funds immediately after they were wired to the account, from a probation officer who testified that Mr. Wimbley was on parole, and from a jailer who testified that Mr. Wimbley had been incarcerated.

[¶ 16]  The district court considered Mr. Wimbley's argument that this evidence was unnecessarily cumulative:

> The ... defendant argued hard on this issue, that the volume of these other acts is unnecessarily cum[ ]ulative; but when the issue is intent, it may be necessary to prove several transactions. That may be the primary way—in fact it sounds like it is the primary way the State has of proving that it wasn't just a mistake, a bad business deal, that there was some intent to defraud; and the State has that high burden of proving intent to defraud; so the Court can't find that these are unnecessarily cum[ ]ulative.

The district court concluded that, when intent is at issue, evidence of several similar, prior acts may be admissible. This conclusion finds convincing support in treatises on evidence. "[W]hen prior acts are offered to show intent ... the inference of intent is also stronger if the acts are often repeated, because sheer repetition strengthens an inference of intent." Mueller & Kirkpatrick, *supra* § 4:34, at 821–22. *See also* 1 Edward J.

Imwinkelried, *Uncharged Misconduct Evidence* § 5:06, at 16 (Thompson/West 2008) ("[T]he more often the defendant performs the actus reus, the smaller is the likelihood that the defendant acted with an innocent state of mind."). Or, put more colorfully, "the chances of an inadvertent shooting on three successive similar occasions are extremely small." 2 John H. Wigmore, *Evidence* § 302, at 241 (Chadbourne rev.1979).

[¶ 17]  We also note that, despite Mr. Wimbley's protestation that "an enormous amount of the State's case was devoted to the presentation of 404(b) evidence," the State offered only four witnesses to talk about three prior transactions. The record reflects that the State was aware of at least four other occasions on which Mr. Wimbley had engaged in similar conduct, but witnesses were not called to discuss those incidents. Eight such witnesses might have been needlessly cumulative, but Mr. Wimbley has failed to convince us that the four witnesses were unnecessarily repetitive or unduly prejudicial. *Compare Ture v. State,* 681 N.W.2d 9, 16 (Minn.2004) (error to admit testimony of 24 witnesses who took three days of trial testifying to redundant details of defendant's prior bad act). We cannot conclude that the district court abused its discretion in admitting this evidence.

### Testimony of parole officer and jail official

■ [¶ 18]  At trial, the district court allowed testimony from Jesse Teverbaugh, who was Mr. Wimbley's parole officer in Illinois. Mr. Wimbley essentially concedes that much of Mr. Teverbaugh's testimony was relevant and admissible. "Mr. Teverbaugh had in fact met Mr. Wimbley face-to-face, unlike many of the other witnesses. Therefore, it is conceivable that Mr. Teverbaugh could have been called to identify Mr. Wimbley, as an individual he knew, using the address and phone number in question in this case." However, Mr. Wimbley argues that it was "absolutely irrelevant" and "extremely prejudicial" for Mr. Teverbaugh to testify that he was Mr. Wimbley's parole officer. This evidence, he contends, should have been excluded pursuant to W.R.E. 403, which provides as follows:

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

[¶ 19]   Similarly, Mr. Wimbley objects to the admission of testimony from Daniel Copley, the jail sergeant for the Yuma County Sheriff's Office in Wray, Colorado. The State used this testimony largely to provide foundation for the admission of recordings of phone calls Mr. Wimbley had made from the jail, in which he mentioned his dealings with Mr. Madden. Mr. Wimbley contends that evidence of his being in jail was unduly prejudicial, and should have been excluded under W.R.E. 403.

[¶ 20]   For us to conclude that a trial court abused its discretion in weighing evidence under W.R.E. 403, "the appellant must show that the testimony has little or no value and that it was extremely inflammatory or introduced solely for the purpose of inflaming the jury." *Jennings v. State*, 806 P.2d 1299, 1305 (Wyo.1991). In this case, the testimony of Mr. Teverbaugh did have probative value in establishing Mr. Wimbley's identity. Mr. Madden had the phone number Mr. Wimbley had given him, and Mr. Teverbaugh confirmed that this was Mr. Wimbley's phone number. Mr. Madden had the number of the bank account to which he wired the money. The bank had Mr. Wimbley's social security number in connection with the account, and Mr. Teverbaugh confirmed that this was Mr. Wimbley's social security number. Mr. Wimbley had told Mr. Madden he was a pipe dealer. Mr. Teverbaugh testified that Mr. Wimbley was employed as a tree trimmer, not as a pipe dealer.

[¶ 21]   We agree with Mr. Wimbley that the fact he was on parole in Illinois was potentially prejudicial. But it was also needed to explain why Mr. Teverbaugh knew Mr. Wimbley's phone number, social security number, and employment. As the State pointed out, this is "normally private information," and without explanation, the jury could have questioned Mr. Teverbaugh's credibility. Similarly, the fact that Mr. Wimbley had been incarcerated in Yuma County, Colorado, was potentially prejudicial. But without revealing that information, Sergeant Copley could hardly have explained why he had recordings of Mr. Wimbley's telephone calls. The potentially prejudicial information was therefore relevant, and was not introduced solely to inflame the jury. We cannot conclude that the district court abused its discretion in admitting this evidence at trial.

[¶ 22]   We also note the restraint with which the State presented this evidence. The witnesses stated only briefly, and without elaboration, that Mr. Wimbley was on parole and incarcerated. The record suggests that Mr. Teverbaugh, in particular, knew additional prejudicial information about Mr. Wimbley's past, but the State avoided any questions that might have solicited that information. Moreover, the district court twice gave the jury an oral limiting instruction concerning Mr. Teverbaugh's testimony, and gave another oral limiting instruction concerning Sergeant Copley's. The district court followed up with this written jury instruction:

> The Court admitted the testimony of Jesse Teverbaugh for the limited purpose of[:] 1. Establishing identity information for the Defendant, 2. Showing Mr. Teverbaugh's knowledge of the Defendant's employment, and 3. Providing background information for the entry of exhibits. You must not consider Mr. Teverbaugh's testimony for any other purpose.

> Testimony showed that the Defendant was under the supervision of Mr. Teverbaugh as a parole agent. You may not draw any inference from the fact that the Defendant was under the supervision of a parole agent, and you may not speculate from that evidence.

> Evidence showed that the Defendant was confined in and made calls from a detention center in Yuma County, Colorado. You may not draw any inference from the fact that the Defendant was incarcerated, and you may not speculate from that evidence.

We presume that the jury followed this limiting instruction. *Reay v. State,* 2008 WY 13, ¶ 17, 176 P.3d 647, 653 (Wyo.2008). We also agree with the district court that the prejudicial effect of this evidence did not substantially outweigh its probative value. The district court did not abuse its discretion in admitting this evidence at trial. We affirm Mr. Wimbley's conviction and sentence.