2010 WY 8

**Balynda Kay FOSTER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–09–0056.**

Supreme Court of Wyoming.

Jan. 28, 2010.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Kerin, Appellate Counsel. Argument by Ms. Kerin.

Representing Appellee: Bruce A. Salzburg, Wyoming Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Graham M. Smith, Assistant Attorney General. Argument by Mr. Smith.

Before VOIGT, C.J., and GOLDEN, HILL, KITE, and BURKE, JJ.

VOIGT, Chief Justice.

[¶ 1] Following a jury trial, Balynda Kay Foster (the appellant) was convicted of numerous drug-related crimes. The appellant appeals the convictions, alleging that the district court abused its discretion by admitting two letters into evidence and alleging that cumulative error occurred. Finding no abuse of discretion in admitting the letters into evidence and finding that no cumulative error occurred, we will affirm.

## ISSUES

[¶ 2] 1. Did the district court abuse its discretion when it admitted into evidence letters purportedly written by the appellant and the appellant's accomplice?

2. Did cumulative error occur warranting reversal of the appellant's convictions?

## FACTS

[¶ 3] The facts of this case are relatively simple and straightforward. On October 29, 2007, the appellant was charged with eleven counts of drug-related offenses, including possession of a controlled substance, possession with intent to deliver a controlled substance, and delivery of a controlled substance.[1] Following a jury trial, the appellant was convicted of eight of the eleven counts and she was subsequently sentenced.[2] The appellant filed a timely notice of appeal alleging that the district court abused its discretion when it admitted into evidence two letters purportedly written by the appellant and the appellant's accomplice (Mr. Walsh) and that cumulative error occurred during trial.

## DISCUSSION

*Did the district court abuse its discretion when it admitted into evidence letters purportedly written by the appellant and appellant's accomplice?*

[¶ 4] Generally, decisions regarding the admissibility of evidence are entrusted to the sound discretion of the district court. We afford considerable deference to the district court's decision and, as long as a legitimate basis exists for the district court's ruling, it will not

---

1. The controlled substances in question included methamphetamine, marijuana, and cocaine.

2. The sentences for each count ranged from 180 days incarceration for the more minor offenses, up to 15 to 25 years incarceration for the more serious offenses.

be reversed on appeal. Under the abuse of discretion standard, our primary consideration is the reasonableness of the district court's decision. The burden of establishing an abuse of discretion rests with the appellant.

If we find that the district court erred in admitting the evidence, we must then determine whether or not the error affected [the appellant's] substantial rights, providing grounds for reversal, or whether the error was harmless. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to [the appellant] if the error had never occurred. To demonstrate harmful error, [the appellant] must prove prejudice under circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play.

*Proffit v. State,* 2008 WY 103, ¶ 12, 191 P.3d 974, 977–78 (Wyo.2008) (quoting *Humphrey v. State,* 2008 WY 67, ¶¶ 44–45, 185 P.3d 1236, 1249 (Wyo.2008)) (internal citations and quotation marks omitted).

[¶ 5] The appellant takes issue with the admission of two letters, one purportedly written by the appellant and the other purportedly written by Mr. Walsh. We will address the admission of each of the letters in turn. As to the admission of the letter purportedly written by the appellant, the appellant makes two arguments supporting her claim that the district court improperly admitted it into evidence. First, the appellant argues that there was insufficient foundation to show that Lieutenant Bisceglia had sufficient familiarity with the appellant's handwriting to make a lay identification of it. Second, the appellant argues that Lieutenant Bisceglia acquired her familiarity with the appellant's handwriting for purposes of litigation, in violation of W.R.E. 901(b)(2).

[¶ 6] We begin our analysis with W.R.E. 901, which sets forth the basic requirements of authentication and identification of evidence. It reads in pertinent part:

(a) *General provisions.*—The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.

(b) *Illustrations.*—By way of illustration only, and not by way of limitation, the following are examples of authentication or identification conforming with the requirements of this rule:

(1) Testimony of Witnesses with Knowledge.—Testimony that a matter is what it is claimed to be;

(2) Nonexpert Opinion on Handwriting.—Nonexpert opinion as to the genuineness of handwriting, based upon familiarity not acquired for purposes of the litigation;

. . . .

 [¶ 7] This Court has rarely addressed the level of familiarity required for a lay witness to testify to the genuineness of a person's handwriting, as described in W.R.E. 901(b)(2). *See Epperson v. State,* 600 P.2d 1051, 1053 (Wyo.1979) (finding, without much analysis, that a wife was sufficiently familiar with her husband's handwriting to be able to authenticate its genuineness). Fortunately, W.R.E. 901 is identical to its federal counterpart, F.R.E. 901. "When this Court construes court rules that are virtually identical to their federal counterparts, relevant federal authority is persuasive." *Walters v. State,* 2008 WY 159, ¶ 13, 197 P.3d 1273, 1277 (Wyo. 2008).

[¶ 8] Federal courts have construed F.R.E. 901(b)(2) liberally to admit into evidence a wide spectrum of handwritten evidence authenticated by lay witness testimony as to familiarity with the handwriting. *See United States v. Apperson,* 441 F.3d 1162, 1200–01 (10th Cir.2006) (finding sufficient basis for witness to testify to the authentication of handwriting on a letter by testifying that "based upon his long-standing association with [the appellant], he was familiar with his handwriting"); *United States v. Tipton,* 964 F.2d 650, 654–55 (7th Cir.1992) (witness could authenticate documents purportedly written by appellant because witness "was familiar with [appellant]'s handwriting and signature as a result of observing . . . documents [appellant] prepared"); *United States v. Barker,* 735 F.2d 1280, 1283 (11th Cir. 1984) (Witnesses who were co-workers of the

appellant could authenticate writing on checks as that of appellant's because they "testified they were familiar with the [appellant]'s handwriting and stated in their opinions it matched or was similar to the handwriting on the checks."). Authenticating handwriting through familiarity by a lay witness "requires nothing more than familiarity of some sort on the part of the witness with the handwriting of the person who, according to the witness, either did or did not pen the signature or writing in issue." 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:4, at 345 (3d ed. 2007). Moreover, familiarity with handwriting need not come from personally witnessing the person sign a document. "Other categories of experience can, however, demonstrate familiarity, such as seeing signatures on writings purporting to be those of the alleged author when the circumstances would indicate that they were genuine." *United States v. Scott*, 270 F.3d 30, 50 (1st Cir.2001). The Advisory Committee Notes to F.R.E. 901(b)(2) provide examples of how a witness may become familiar with handwriting in order to testify to its authenticity:

> Example (2). Example (2) states conventional doctrine as to lay identification of handwriting, which recognizes that a sufficient familiarity with the handwriting of another person may be acquired by seeing him write, by exchanging correspondence, or by other means, to afford a basis for identifying it on subsequent occasions. McCormick § 189. See also *California Evidence Code* § 1416. . . .

[¶ 9] In this case, Lieutenant Bisceglia testified that the reason she was able to identify the handwriting on the first letter as that of the appellant was because she, "as lieutenant of the jail, receive[s] the requests and grievances from the inmates. And [the appellant] has a particular type of writing that is easy to identify." Lieutenant Bisceglia acquired her familiarity with the appellant's handwriting by reading it repeatedly, which the Advisory Committee Notes to F.R.E. 901(b)(2) recognize as creating adequate familiarity as foundation to testify. We find no reason to come to a different result under W.R.E. 901(b)(2). Accordingly, the State sufficiently authenticated the letter and the district court did not abuse its discretion when it admitted the letter into evidence.

[¶ 10] We now turn to appellant's argument that the district court abused its discretion in admitting the letter purportedly written by the appellant because, according to the appellant, Lieutenant Bisceglia acquired her familiarity with the appellant's handwriting for purposes of litigation. Specifically, the appellant argues that, as an employee of the State, Lieutenant Bisceglia is an agent of the State, and because the State is a party to the prosecution of the appellant, that without a showing by the State to the contrary, this Court must assume that Lieutenant Bisceglia's familiarity with the handwriting on the letter must have come from preparing for litigation.

[¶ 11] We again rely on federal authority for guidance. Federal case law does not support the appellant's broad assertion that simply being a State agent and acting as a lay witness to authenticate handwriting automatically amounts to becoming familiar with the handwriting for purposes of litigation as contemplated by F.R.E. 901(b)(2). In *United States v. Scott*, 270 F.3d 30 (1st Cir.2001), after analyzing the rationale behind F.R.E. 901(b)(2), the court found that an IRS agent did not become familiar with the defendant's handwriting for purposes of litigation. The IRS agent in *Scott* became familiar with Scott's handwriting over the course of several years as an agent investigating Scott for various criminal tax offenses. *Id.* at 50. The IRS agent's familiarity came from, among other things, viewing several letters, past court pleadings, signature cards used to open bank accounts, checks and tax returns, all written by Scott, as well as witnessing Scott sign a document in his presence. *Id.* at 48. Scott argued that the IRS agent's testimony that certain documents contained Scott's handwriting was inadmissible under F.R.E. 901(b)(2) because the agent became familiar with Scott's handwriting through his criminal investigation of Scott. The First Circuit rejected this argument stating that the IRS agent

became familiar with Scott's handwriting over the course of several years, and he did so not for the purpose of testifying, but instead for the purpose of solving a crime. Scott was perfectly entitled to argue to the jury that [the IRS agent's] interest in securing a conviction colored [the IRS agent's] perception of Scott's handwriting. That possibility, however, did not require the district court to exclude the evidence under Rule 901(b)(2).

*Id.* at 50 (internal citations omitted).

[¶ 12] Lieutenant Bisceglia testified as to how she became familiar with the letters, and specifically how she was able to identify the handwriting on the first letter as the appellant's. When asked how she was familiar with the two letters in question, Lieutenant Bisceglia stated

They came across my desk because they were found by deputies in the jail. I am not sure exactly where these two were found, because it was kind of an ongoing problem. They would hide letters in different places, and the deputies would find them, and they would come up to my desk.

As noted above, Lieutenant Bisceglia then testified that the reason she was able to identify the handwriting on the first letter as the appellant's was because she, "as lieutenant of the jail, receive[s] the requests and grievances from the inmates. And [the appellant] has a particular type of writing that is easy to identify." We find that F.R.E. 901(b)(2) would not bar Lieutenant Bisceglia from authenticating the letter, and we find no reason to conclude otherwise under W.R.E. 901(b)(2). The Lieutenant did not obtain her familiarity with the appellant's handwriting for the purpose of litigation.

[¶ 13] As to the letter purportedly written by Mr. Walsh, the appellant argues that the district court improperly admitted it into evidence because the State failed to offer sufficient proof that the letter was in Mr. Walsh's handwriting and also failed to show that Lieutenant Bisceglia was sufficiently familiar with Mr. Walsh's handwriting to authenticate the letter. However, it appears from the record that the authentication of this letter came not under W.R.E. 901(b)(2), but instead under W.R.E. 901(b)(1), through proof that it was what it was purported to be. The following colloquy occurred between the prosecutor and Lieutenant Bisceglia relating to the authentication of the letter purportedly written by Mr. Walsh:

Q. [By Prosecutor] And [Exhibit] Number 2. Are you familiar with State's 2?

A. [By Lieutenant Bisceglia] Yes. From [Mr. Walsh].

Q. And how do you know that?

A. I remember this one because we actually had the camera, because he hid it in the gym behind the mats we have in the gym. And we found it when we actually went back and looked on the videos to see where it came from.

The appellant argues that no testimony was offered to show that Mr. Walsh authored the letter, and she questions whether someone else could have in fact written the letter, even though she does not point to any specific person. However, the testimony provided by Lieutenant Bisceglia makes clear that her knowledge and familiarity with the letter came not from her familiarity with Mr. Walsh's handwriting, but instead from watching him on a video camera place the letter where it was found. This testimony is sufficient to lay a foundation for its admission under W.R.E. 901(b)(1), as a witness with knowledge. The appellant's arguments as to whether or not Mr. Walsh actually wrote the letter goes not to foundation for admission, but rather to the weight of the evidence. 5 Christopher B. Mueller & Laird C. Kirkpatrick, *Federal Evidence* § 9:2, at 333–34 (3d ed. 2007) ("The fact that a matter satisfies the authentication requirement and is received in evidence does not mean that the trier of fact is bound either to conclude that the matter is in fact authentic or that it has the significance in the case the proponent suggests.... [T]he jury remains free to reject the matter in question on the ground that it is not authentic, or to accept it as authentic while according it little or no weight in the case."). In the context of the instant case, there is no likelihood, or even a suggestion, of the involvement of someone else who may have written the letter. Accordingly, the district court did not abuse its discretion in admitting it into evidence.

### Did cumulative error occur warranting reversal of the appellant's convictions?

[¶ 14] The appellant points to numerous instances during the trial in which she claims error occurred, and asserts that when considered together, those instances of error constitute cumulative reversible error. Some of the instances to which the appellant points as error were contemporaneously objected to at trial, and others were not. Consequently, the alleged errors followed by objections are reviewed for an abuse of discretion, while those instances to which no objection was made must be reviewed for plain error. *Proffit*, 2008 WY 103, ¶ 12, 191 P.3d at 977–78. With respect to an abuse of discretion standard of review, we have noted that "[a] trial court's decision . . . is entitled to considerable deference, and will not be reversed on appeal unless the appellant demonstrates a clear abuse of discretion. '[A]s long as there exists a legitimate basis for the trial court's ruling, that ruling will not be disturbed on appeal.' " *Wimbley v. State*, 2009 WY 72, ¶ 10, 208 P.3d 608, 611 (Wyo.2009) (quoting *Leyva v. State*, 2007 WY 136, ¶ 17, 165 P.3d 446, 452 (Wyo.2007)) (internal citation omitted). Moreover, under the abuse of discretion standard, "[e]rror is prejudicial if there is a reasonable possibility that the verdict might have been more favorable to the defendant if the error had not been made." *Reay v. State*, 2008 WY 13, ¶ 8, 176 P.3d 647, 650 (Wyo.2008).

[¶ 15] Alternatively, "[t]o prove plain error, [the appellant] must demonstrate: (1) that the record clearly reflects the alleged error, (2) that a clear and unequivocal rule of law was violated, and (3) that the violation adversely affected a substantial right of [the appellant]'s to his material prejudice." *Bloomer v. State*, 2009 WY 77, ¶ 18, 209 P.3d 574, 592 (Wyo.2009). "In cases applying the plain error standard, we have written that error is prejudicial when 'a reasonable probability exists, absent the error, that the appellant may have enjoyed a more favorable verdict.' " *Britton v. State*, 2009 WY 91, ¶ 15 n. 3, 211 P.3d 514, 517 n. 3 (Wyo.2009) (quoting *Guy v. State*, 2008 WY 56, ¶ 9, 184 P.3d 687, 692 (Wyo.2008)).

[¶ 16] Finally, because we are reviewing the alleged errors for cumulative error, we have stated:

The purpose of evaluating for cumulative error is "to address whether the cumulative effect of two or more individually harmless errors has the potential to prejudice the defendant to the same extent as a single reversible error." *McClelland v. State*, 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo.2007). In conducting a cumulative error evaluation, we consider only matters that we have determined to be errors. *Id.* We will reverse a conviction only when "the accumulated effect [of the errors] constitutes prejudice and the conduct of the trial is other than fair and impartial." *Id.* (quoting *Alcala v. State*, 487 P.2d 448, 462 (Wyo.1971)).

*Guy*, 2008 WY 56, ¶ 45, 184 P.3d at 701.

[¶ 17] The instances in which the appellant claims error occurred are: (1) the district court's refusal to provide a limiting instruction following statements made by the prosecutor; (2) admission of irrelevant and prejudicial evidence; (3) improper questioning and argument by the prosecutor; and (4) improper vouching. We will address each of these in turn, determining first whether error occurred, and then whether cumulative error occurred.

### Limiting or Curative Instruction

[¶ 18] The appellant first argues that error occurred when the district court refused to provide a limiting instruction after it sustained defense counsel's objection to statements made by the prosecutor during closing argument. The following excerpt is the focus of this particular claim of error, during which the prosecutor is referring to a witness's testimony:

[Prosecutor]: But because of that at a real young age, his life was changed. He will be a felon, and he testified as a felon. He fights now with alcohol and an [sic] methamphetamine addiction. But his testimony—you observed his candor on the witness stand—was painful; it was truthful; and it described the hell—

[Defense Counsel]: Objection, Your Honor. That's an exclusive province of the jury on the truthfulness or not truthfulness of the testimony.

THE COURT: The objection is sustained.

[Prosecutor]: You heard his testimony, and you can evaluate that.

Prior to defense counsel's closing argument, he requested "a limiting instruction on the truthful comment that was made-," [3] and the district court responded: "The objection was sustained. There will be no more instructions." We find it unnecessary to determine whether the failure to provide a limiting or curative instruction was error because, even if it was, the appellant has failed to demonstrate any resulting prejudice. "A trial court is given wide latitude in instructing the jury and, as long as the instructions correctly state the law and the entire charge covers the relevant issue, reversible error will not be found." *Black v. State*, 2002 WY 72, ¶ 5, 46 P.3d 298, 300 (Wyo.2002). The general jury instructions already contained an instruction to the jury that it was "to determine the credibility of all witnesses who testify before you, and from such evidence and testimony, to determine the issues of fact in this case." Moreover, a proper objection was made in which the defense counsel adequately explained the reasoning for the objection, which acted not only as a legal basis for the judge to sustain the objection, but also contemporaneously reminded the jury that it was "[the] exclusive province of the jury [to determine] the truthfulness or not truthfulness of the testimony." Any further instruction in this regard was unnecessary. Accordingly, we find no error for not providing a limiting or curative instruction.

### Irrelevant Evidence

◼ [¶ 19] The second error that the appellant points to is the district court's admission into evidence of what the appellant claims to be "irrelevant [and] prejudicial evidence." Specific instances of alleged error are: (1) testimonial evidence of minor witness's drug use, drug testing, and past crimes; (2) testimony from a State's witness that she "came to know" the appellant in prison; and (3) testimony from Lieutenant Bisceglia that the appellant was an inmate in the jail.

◼ [¶ 20] The appellant points to W.R.E. 401 and 402 as the clear and unequivocal rules of law that were violated by the admission of this testimony. W.R.E. 401 provides that " '[r]elevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." W.R.E. 402 provides in pertinent part that "[a]ll relevant evidence is admissible...." The appellant claims that the admission of the above-mentioned testimony (*see supra* ¶ 19) violated these rules because it is not "relevant to any element of any crime charged against [the appellant]." Generally speaking, "[t]he test of relevancy is one of reasonableness and common sense, liberally applied to favor admissibility rather than the exclusion of evidence." *Callen v. State*, 2008 WY 107, ¶ 17, 192 P.3d 137, 144 (Wyo.2008). Contrary to the appellant's argument, we have upheld the admission of evidence as relevant even in situations when it does not directly "prove or disprove an element of any crime charged." *Trusky v. State*, 7 P.3d 5, 12 (Wyo.2000) (upholding the admission of evidence unrelated to an element of a crime charged because it was relevant to the veracity of the witness's testimony). With these general principles in mind, we will address each of the alleged admissions of irrelevant evidence.

---

3. Defense counsel requested a limiting instruction, but we note that a curative instruction was more appropriate given the relief requested. A limiting instruction is generally used to instruct the jury to consider a piece of evidence only for a particular purpose. *See Williams v. State*, 2004 WY 117 ¶ 8, 99 P.3d 432, 436 (Wyo.2004) (stating that "[a limiting] instruction must inform the jury of the specific purpose for which they may consider the evidence"). Conversely, a curative instruction is used to cure potential harm caused by misconduct or errors of some kind during the trial. *See Warner v. State*, 2001 WY 67, ¶ 21, 28 P.3d 21, 28 (Wyo.2001) ("Appropriate objections and subsequent curative instructions may cure an error at trial."). In any case, the fact that a limiting instruction was requested rather than a curative instruction, does not change our analysis, nor does it change the result, because error did not occur for failing to provide either.

### 1. Testimonial evidence of minor witness's drug use, drug testing, and past crimes

[¶ 21] As to the testimony from the minor witness relating to the minor's past methamphetamine use, the appellant points to several instances during the State's questioning of this witness where error allegedly occurred. The first occurred during direct examination of the minor witness by the prosecutor.

Q. [By Prosecutor] Between ... January of 2007 until the time that you were arrested, describe your addiction to methamphetamine.

A. [By Witness] It was horrible. It got completely out of hand. I did stuff that I never thought I could do in my life. It ruined my relationship with my family; most of all, my little sister, which we are really close now. But that is what gives me the strength to stay sober every day is my sister and my family.

The appellant did not object to this testimony, so we review its admission for plain error. As evidenced by the passage above, the record is clear as to the challenged testimony. The appellant claims that this testimony was improper because it was irrelevant, but we have allowed a witness's credibility to be bolstered on direct examination to soften the blow of cross-examination. *Strickland v. State*, 2004 WY 91, ¶ 22, 94 P.3d 1034, 1046 (Wyo.2004). That is what happened here. The appellant even acknowledges in her brief that, given that the State had charged the appellant with "the serious crime of delivering a controlled substance to a minor; ... the credibility of [the minor witness] was crucial to the State's case." Nonetheless, the appellant argues that the effect of this allegedly improper questioning was exacerbated by the prosecutor mentioning the negative implications of methamphetamine use in his closing argument. In reference to the minor witness's testimony, the prosecutor stated:

And you have the ability to see why a person would come in here and try to stop it. Try to stop what? Try to stop methamphetamine, a situation that [the minor witness] indicated is hell on earth. Lost dreams, shattered lives, hopelessness, loss of conscience. You lose your conscience.

You steal things in order to satisfy your methamphetamine habit.

And the road to hell is paved with good intentions. And certainly methamphetamine leads you to that same hell, also, most probably, to prison, which you have seen so many people testify that have felony records here.

The appellant argues that these statements amount to a "community outrage" argument, which this Court has stated is reversible prosecutorial misconduct. *Strange v. State*, 2008 WY 132, ¶¶ 6–12, 195 P.3d 1041, 1043–48 (Wyo.2008). However, the concerns we expressed in *Strange* in overturning the appellant's conviction in that case do not exist here. Specifically, in *Strange*, we were concerned with presentation of testimony, evidence and argument which "appeal to the jury's sense of duty to help local law enforcement by convicting [the appellant]." *Id.* at ¶ 6, at 1044 (quoting *Gayler v. State*, 957 P.2d 855, 861 (Wyo.1998)). In that case, we cited nine instances where the prosecutor elicited testimony or commented personally about the prevalent methamphetamine problem in the county where the appellant was tried, as well as the negative effects that the drug has on the person taking the drug and the community as a whole. *Id.* at ¶ 8, at 1044–47. We noted that "most, if not all, of the information presented is simply irrelevant to any of the issues being tried." *Id.* at ¶ 9, at 1047. Conversely, the minor witness's testimony and the prosecutor's statements in this case were relevant to the credibility of the witness. Rather than being an attempt to "appeal to the jury's sense of duty to help local law enforcement by convicting [the appellant]," the prosecutor's statements in this case were more of an inartful description of the facts that should make the witness credible. *Id.* at ¶ 6, at 1044. Thus, we do not find that the testimony or the prosecutor's comments violated any clear rule of law. Consequently, the appellant has failed to show plain error in relation to these statements.

[¶ 22] The appellant also claims error occurred when the prosecutor elicited testimony on redirect examination of the minor witness regarding the minor witness passing drug tests as part of his probation.

The appellant objected to this testimony as being irrelevant because it did not relate to an element of the crimes charged. The objection was overruled. Because the appellant made a timely contemporaneous objection, we review the admission of the testimony for an abuse of discretion. *Proffit*, 2008 WY 103, ¶ 12, 191 P.3d at 977. Considering the testimony by itself, it is likely irrelevant, but doing so ignores the context and circumstances surrounding the question. The appellant's argument of relevancy ignores the fact that the testimony was being used to rehabilitate the credibility of the minor witness.[4] On cross-examination, defense counsel questioned the minor witness about his probation and whether it had been violated and revoked as a result of a pending driving while under the influence charge. This was a clear attempt to discredit the minor witness's credibility. In an attempt to rehabilitate the credibility of the minor witness, the following exchange occurred during redirect examination:

Q. [By Prosecutor] On probation—while you are on probation, you are tested for controlled substances; is that correct?

A. [By Minor Witness] Correct. I get tested every two weeks and whenever they show up to my house and give me a mouth swab.

. . . .

Q. And how have those come out?

A. Negative.

In context, it is clear that the State was using this testimony to rehabilitate the minor witness's credibility as it related to his behavior while he had been on probation. The defense counsel "opened the door" to such testimony by trying to discredit the minor witness's credibility through questioning relating to probation violations. *See Lawrence v. State*, 2007 WY 183, ¶ 14, 171 P.3d 517, 521 (Wyo.2007) (" '[A] defendant may open the door to otherwise inadmissible testimony when he inquires about a particular subject,' including evidence of prior criminal miscon-

duct.") (quoting *Gayler*, 957 P.2d at 858). Accordingly, the district court did not abuse its discretion in admitting this testimony.

[¶ 23] The final alleged error also occurred during the minor witness's redirect examination, when he testified that he committed burglaries while he was using methamphetamine. The appellant did not object to this testimony, so we review it for plain error. *Proffit*, 2008 WY 103, ¶ 12, 191 P.3d at 978. The appellant argues that this testimony was improper because it is irrelevant and also because it is improper to question a witness about prior offenses. The appellant relies on *Ramirez v. State*, 994 P.2d 970 (Wyo.2000) and *Taylor v. State*, 2001 WY 13, 17 P.3d 715 (Wyo.2001), arguing that those cases prohibit the admission of any details relating to a witness's prior convictions. However, reliance on these cases is misplaced because they do not stand for that proposition in this context. *Ramirez* dealt with the right of a testifying defendant to explain his prior offenses by testifying to the details thereof. *Ramirez*, 994 P.2d at 970. We found no abuse of discretion by the district court in sustaining an objection, when the defendant began testifying to the details of his previous offenses. *Id.* at 974. In *Taylor*, we held that error occurred when a prosecutor sought testimony from a defendant regarding details of his prior offenses, beyond the details allowed under W.R.E. 609.[5] *Taylor*, 2001 WY 13, ¶ 22, 17 P.3d at 723. The appellant has failed to explain how these cases apply in the current situation except to argue that we did not draw a distinction in *Ramirez* and *Taylor* between a testifying defendant and witness. In both *Ramirez* and *Taylor*, the question was what facts about a crime are admissible where that crime is being presented to impeach a witness. Here, the situation appears to have been the State attempting to make the appellant's conduct look worse by showing that methamphetamine made a witness commit

---

4. As we noted above, testimony can be relevant even when it does not help prove or disprove an element of a crime charged. *See supra* ¶ 20.

5. We have stated that "Wyoming's rule is that a testifying defendant is required to give answers

only as to whether he had been previously convicted of a felony, as to what the felony was, and as to when the conviction was had." *Ramirez*, 994 P.2d at 973.

burglaries. Thus, the appellant has not demonstrated what clear rule of law was violated, and has failed to prove plain error.

## 2. Testimony from a State's witness that she "came to know" the appellant in prison

 [¶ 24] The appellant argues that error occurred when a State's witness testified that she "came to know" the appellant "in prison." Specifically, the appellant claims that this testimony was irrelevant and improper uncharged misconduct evidence. There was no contemporaneous objection to this testimony; however, the appellant claims that defense counsel requested notice of the State's intent to use W.R.E. 404(b) evidence, which rule the appellant argues encompasses this testimony, and that the State failed to notify the appellant that it intended to disclose that the appellant was "in prison." We acknowledge previous cases where we have said that a pre-trial demand for notice of intent to use W.R.E. 404(b) evidence may act as a continued objection to such evidence at trial. *See Trevino v. State*, 2006 WY 113, ¶ 17, 142 P.3d 214, 219 (Wyo.2006); *Howard v. State*, 2002 WY 40, ¶ 23, 42 P.3d 483, 491 (Wyo.2002). Thus, the review of such evidence could arguably be for an abuse of discretion, not plain error. However, the appellant has failed to make any cogent argument showing that this particular evidence is in fact W.R.E. 404(b) evidence or make any argument supporting an abuse of discretion standard of review. Regardless, we find it unnecessary to determine the appropriate standard of review because the result remains the same under either standard of review. A review of the record indicates the following exchange on direct examination between the prosecutor and the witness:

Q. [By Prosecutor] Did you ever have contact with an individual by the name of Balynda Foster [the appellant]?

A. [By Witness] Yes, sir, I did.

Q. And tell us about how you came to know that person.

A. I met her in prison.

Q. And is Ms. Foster in the courtroom here today?

A. Yes.

Q. Would you identify—

A. She's with the defense attorney.

Q. Can you identify her by clothing?

A. She's wearing a black outfit.

[Prosecutor]: Your Honor, would you let the record reflect identification of the defendant?

THE COURT: So noted.

The record makes clear that the testimony was foundation for the witness's identification of the appellant. "Identity is always an element of the crime charged, and must be proven by the prosecution. Identity is, therefore, always a material issue. Consequently, if evidence of uncharged misconduct tends to prove identity of the perpetrator of the charged crime, it is generally admissible." *Ferguson v. State*, 2007 WY 157, ¶ 18, 168 P.3d 476, 481 (Wyo.2007) (internal citations omitted). Even assuming *arguendo* that the testimony was inadmissible, the appellant has failed to make any argument indicating how or to what degree she was prejudiced by its admission. Because this testimony was foundational for identification of the appellant, and because the appellant has failed to explain how she was prejudiced by its admission, the appellant has failed to prove either plain error or an abuse of discretion.

## 3. Testimony from Lieutenant Bisceglia that the appellant was an inmate in the jail

 [¶ 25] The appellant argues that error occurred when the district court permitted one of the State's witnesses to testify that the appellant was currently an inmate in the jail.[6] Specifically, the appellant argues that testimony by Lieutenant Bisceglia that the appellant "was in jail while pending trial was totally irrelevant." There were timely objections made with respect to this testimony, so its admission is reviewed for an abuse of discretion. A review of the record with

---

6. This testimony was elicited in relation to the admission of the two letters discussed above.

*See supra* ¶¶ 4–13.

respect to this argument indicates a similar situation as the previous issue in that proving Lieutenant Bisceglia's familiarity with the appellant was necessary and relevant in order to show Lieutenant Bisceglia's ability to identify the appellant's handwriting. In order to lay an adequate foundation for Lieutenant Bisceglia to be able to testify as to whose handwriting was on the letters, it was necessary to show how Lieutenant Bisceglia came to acquire such knowledge. It just so happened that Lieutenant Bisceglia's knowledge was acquired as a result of her employment as a jailer while the appellant was an inmate. Furthermore, while we recognize that evidence of incarceration of a defendant could be prejudicial, the appellant in this case has failed to demonstrate unfair prejudice.[7] By the nature of the case, the jury was aware that the appellant was charged with eleven drug-related crimes. Surely, it was not a big surprise to the jury to find that the appellant had been in jail as a result. We will not presume prejudice, and we therefore cannot say that the district court abused its discretion in admitting this testimony.

### Improper Questioning and Argument by the Prosecutor

[¶ 26] The third instance that the appellant points to as error related to questions during Mr. Walsh's testimony and comments made by the prosecutor during rebuttal closing argument relating to Mr. Walsh's testimony. Because there was no objection to either incident, we review for plain error. As to the first prong of the plain error test, the record is clear as to the challenged testimony. The record indicates that during cross-examination, the prosecutor had the following exchange with Mr. Walsh:

Q. [By Prosecutor] I was just making sure. Now, as far as the $2,100 cash that was contained in a cigarette case, if [the appellant] indicated that that was her money, would she be telling the truth?

A. [By Mr. Walsh] Depends on how you look at it. I gave her that money.

Q. If she said her father gave her that money for rent, would that be true?

A. That would not be true. . . .

. . . .

Q. [By Prosecutor] So you were around the residence on May 15th; is that correct?

A. [By Mr. Walsh] I was around the residence on May 15th.

Q. I'm going to ask you a question. At about 10:15 that night, did an individual with Louisiana plates pick you up at 705 Ferris Court—

A. No, sir, it did not.

. . . .

Q. [By Prosecutor] Did—were you picked up by that vehicle?

A. [By Mr. Walsh] I was not. I was still working on my pickup.

Q. If the officers who were surveilling you said that [Mr. Walsh] got in the vehicle and drove away, would those officers be incorrect?

A. They would be lying.

Q. They would be lying?

A. They would be.

During rebuttal closing argument, the prosecutor stated that Mr. Walsh had "an extremely good reason not to tell the truth in this case; because he is in love and he is love in [sic] with [the appellant], and he will do anything he can." The prosecutor went on to discuss Mr. Walsh's testimony relating to the $2,100 stating: "And the $2,100 was admitted by the [appellant] that she it had [sic] in her own possession and it was her money. Someone is lying about the money. You will have to chose [sic] whether it's the paramour or the [appellant] in this case."

7. The appellant argues that if the testimony was truly being used as foundation for the admission of the letters, then there should have been a limiting instruction provided to admonish the jury that the testimony relating to the appellant's incarceration should only be used for foundation purposes and nothing else. However, the appellant concedes that there was no request for such an instruction and without such a request, we will not weigh the question of whether it was error not to provide one. *Cazier v. State*, 2006 WY 153, ¶ 34 n. 6, 148 P.3d 23, 34 n. 6 (Wyo. 2006).

[¶ 27] The clear rule of law in question is the general prohibition against "asking any witness whether another witness has lied." *Proffit v. State*, 2008 WY 114, ¶ 16, 193 P.3d 228, 236 (Wyo.2008). The record clearly reflects that the prosecutor violated this clear rule of law with the above questioning of Mr. Walsh. Thus, the first two prongs of the plain error test are met. The next question then is to determine whether this error was prejudicial. We previously stated:

> To evaluate the prejudice of improper "were-they-lying" questions, courts weigh several factors: 1) the severity and pervasiveness of the misconduct; 2) the significance of the misconduct to the central issues in the case; 3) the strength of the State's evidence; 4) the use of cautionary instructions or other curative measures; and 5) the extent to which the defense invited the misconduct.

*Talley v. State*, 2007 WY 37, ¶ 16, 153 P.3d 256, 262 (Wyo.2007). Here, although no curative instruction was given, the State presented other witness testimony and evidence to support its case and the improper conduct was not pervasive. Moreover, we have stated that "a defendant cannot 'open the door' to the type of improper questioning used by the prosecutor in this case. However, ... a defendant's invitation or instigation is a relevant consideration in assessing the prejudice element." *Id.* at ¶ 15, at 261. The appellant's theory in this case, at least in part, appeared to be that Mr. Walsh was responsible for the crimes with which she was charged. In an attempt to support that theory, the defense called Mr. Walsh as a witness, after which the State challenged his version of the story with that of other witnesses' versions of the story. The appellant, by 'opening the door' to this line of questioning, minimized the prejudice that may be assigned to it. In addition, the prosecutor lightened any prejudicial effect by reminding the jury in closing argument that it was the jury's task to determine these credibility issues. In light of all the factors, we do not find the "were-they-lying" questions and comments in this case to be prejudicial to such an extent as to require reversal.

### Improper Vouching

[¶ 28] The fourth and final instance that the appellant asserts is error is a statement made by the prosecutor that the appellant alleges constituted improper vouching for the credibility of a witness. The specific statement occurred during closing argument when the prosecutor said, "When we look at the credibility of that witness, she goes basically uncontradicted except for the cross-examination of defense counsel in that area. It certainly did not overcome her candor, her honesty, and the pain and suffering which methamphetamine caused her." No objection was made to this statement, so we review it for plain error. The record is certainly clear as to the challenged testimony. The clear rule of law applicable to this situation is the prohibition of vouching for the credibility of a witness. *See Conine v. State*, 2008 WY 146, ¶ 17, 197 P.3d 156, 162 (Wyo.2008). However, we do not find that the comments made by the prosecutor require reversal. We upheld a conviction where similar statements were made in *Teniente v. State*, 2007 WY 165, 169 P.3d 512 (Wyo.2007). In that case, during closing argument, the prosecutor said:

> [W]e have one eyewitness, one eyewitness that stepped up to the plate February 18th, and said, 'I was there. This is what happened.' A statement as, you know, he has stayed consistent with, a statement he testified to in Eddie's trial.

> As you notice, when [Defense counsel] went to question him, he couldn't impeach him on any of his prior inconsistent statements because there weren't any. He has stayed consistent, ladies and gentlemen, even in the face of threats from his family, ostracism by his family.

> He saw what happened, and he decided to step forward and tell the truth, even though the first time, it's against his very own brother, and now the second time, against his cousin. Courage.

*Id.* at ¶ 32, at 525. In upholding the admissibility of these comments, we rejected the appellant's argument that these comments amounted to vouching, noting that the prosecutor "was arguing reasonable inferences, drawn from evidence introduced at trial, that

[the witness's] testimony could be seen as reliable." *Id.* at ¶ 33, at 525. In stating that the witness's testimony went "basically uncontradicted" the prosecutor in the instant case pointed out the reasonable inference that she was not lying. Because the appellant has failed to demonstrate a clear rule of law that was violated, plain error has not been shown.

[¶ 29] Under a cumulative error analysis, "we only consider matters that are determined to be errors." *McClelland v. State,* 2007 WY 57, ¶ 27, 155 P.3d 1013, 1022 (Wyo. 2007). Of the alleged errors raised by the appellant, we find only one to be error: the "were-they-lying" technique invoked by the prosecutor in relation to questions posed to Mr. Walsh. However, as noted above, we do not find that colloquy sufficiently prejudicial to require reversal.

### CONCLUSION

[¶ 30] We conclude that the district court did not abuse its discretion when it admitted into evidence the letters purportedly written by the appellant and Mr. Walsh. The State properly authenticated the letter purportedly written by the appellant through testimony by Lieutenant Bisceglia based on her familiarity with the appellant's handwriting, which familiarity did not come from preparing for litigation. Likewise, the State properly authenticated the letter purportedly written by Mr. Walsh based on Lieutenant Bisceglia's familiarity with the video which captured images of Mr. Walsh hiding the note in the location in which it was discovered. Finally, cumulative error did not occur. While it was improper for the State to utilize the "were-they-lying" technique, the appellant failed to demonstrate sufficient prejudice to amount to cumulative error.

[¶ 31] Affirmed.