2011 WY 156

**Mark J. GARNER, Appellant (Defendant),**

v.

**The STATE of Wyoming, Appellee (Plaintiff).**

**No. S–11–0119.**

Supreme Court of Wyoming.

Nov. 16, 2011.

1. Did the trial court err in admonishing defense counsel, limiting his cross-examination and issuing a limiting instruction to the jury, when in fact defense counsel was properly testing the credibility of the confidential informant, HB?

2. Was there insufficient evidence to sustain the convictions of Appellant?

### FACTS

[¶ 3] In July of 2010, Appellant was arrested for selling methamphetamine to a confidential informant in two "controlled buy" operations initiated by the Wyoming Division of Criminal Investigation (DCI).[2] The arrest resulted in large part from information obtained by a confidential informant, HB. HB purchased methamphetamine from Appellant on two occasions in June of 2009. In the first instance, DCI agents fitted HB with a wireless transmitter, provided her with $60 in controlled buy funds, and kept her under constant surveillance as she proceeded to purchase methamphetamine from Appellant at the home of Appellant's girlfriend, Rachelle Earley. In the second instance, DCI agents again fitted HB with a wireless transmitter, provided her with $200 in controlled buy funds, and kept her under surveillance as she purchased methamphetamine from Appellant at a truck stop. In return for HB's service as a confidential informant, the State agreed to recommend a deferred prosecution under Wyo. Stat. Ann. § 7–13–301 in relation to criminal charges against HB stemming from an alleged delivery of marijuana.

Representing Appellant: Diane M. Lozano, State Public Defender; Tina N. Olson, Appellate Counsel.

Representing Appellee: Gregory A. Phillips, Attorney General; Terry L. Armitage, Deputy Attorney General; D. Michael Pauling, Senior Assistant Attorney General; Jenny Lynn Craig, Senior Assistant Attorney General.

Before KITE, C.J., and GOLDEN, HILL, VOIGT, and BURKE, JJ.

BURKE, Justice.

[¶ 1] Appellant, Mark J. Garner, challenges his convictions on two counts of delivery of a controlled substance, in violation of Wyo. Stat. Ann. § 35–7–1031(a)(i).[1] He contends the district court improperly limited cross-examination of a key prosecution witness, and that the evidence was insufficient to support his convictions. We affirm.

### ISSUES

[¶ 2] Appellant presents the following issues:

1. Wyo. Stat. Ann. § 35–7–1031(a)(i) (LexisNexis 2009) provides as follows:

§ 35–7–1031. **Unlawful manufacture or delivery; counterfeit substance; unlawful possession.**
(a) Except as authorized by this act, it is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver, a controlled substance. Any person who violates this subsection with respect to:
(i) Methamphetamine or a controlled substance classified in Schedule I or II which is a narcotic drug, is guilty of a crime and upon conviction may be imprisoned for not more than twenty (20) years, or fined not

more than twenty-five thousand dollars ($25,000.00), or both[.]

2. "In the course of a controlled buy, a confidential informant purchases drugs from a source predetermined by a task force within DCI. The confidential informant is provided the money to make the purchase and his person and vehicle are searched prior to the controlled buy to ensure that no unrelated drugs or weapons are used in the purchase. The informant is wired and under surveillance during the course of the controlled buy to ensure his safety." *Washington v. State,* 2011 WY 132, ¶ 4 n. 1, 261 P.3d 717, 720 n. 1 (Wyo.2011).

[¶ 4] Appellant was charged with two counts of delivery of methamphetamine and one count of conspiracy to deliver methamphetamine. Ms. Earley was also charged with conspiracy and as an accessory to delivery of methamphetamine. The two cases were consolidated for trial.

[¶ 5] At trial, just before opening statements, the court held a hearing outside the presence of the jury.[3] During this hearing, defense counsel indicated his intent to cross-examine HB about her plea agreement under Wyo. Stat. Ann. § 7–13–301. Counsel stated that "What I would want to talk about is the original charges [sic] that she was facing, the timing of those charges related to when she entered into a plea agreement[,] and when she cooperated here with D.C.I." The court summarized the argument by asking counsel, "So, essentially, what you're saying is what she's doing here is part of a deal she got to get a 7–13–301?" Counsel responded "That is correct, your Honor." The court determined that defense counsel could inquire into HB's agreement with the State because it demonstrated potential bias.

[¶ 6] During cross-examination of HB, defense counsel inquired about HB's arrest for delivery of marijuana and the resulting criminal charges. When counsel asked about the circumstances surrounding the alleged delivery, the prosecutor objected, and the following exchange occurred:

THE COURT: That's sustained. I don't understand what that is. She's admitted she has done that, so we're over.

DEFENSE COUNSEL: I had one more question. I was just trying to make sure the foundation was there, but I would stop there if you would like me to.

THE COURT: Well, I guess I don't see it, but if you want to make a proffer, I'll let you do it. This is beyond what we've talked about before. But if you've got a point that I don't get or is important, in fairness, I'll let you get—you know, have some means of getting to it. If you've got just one more question, I'll let you do that.

DEFENSE COUNSEL: I appreciate that, your Honor.

Q: [HB], is it true that you had your 16–year–old son helping you sell marijuana?

A: That is true.

THE COURT: The objection is sustained. Go ahead, though.

DEFENSE COUNSEL: Thank you, your Honor.

Q: At that point—

PROSECUTION: Your Honor, may we approach the bench?

THE COURT: Yes.

DEFENSE COUNSEL: I'm done, your Honor.

The following discussion was then held at the bench:

PROSECUTION: Your Honor, in relation to the prior testimony, today we had a discussion as to what we were going to talk about as far as character evidence and other issues. I believe that there was no mention or discussion of any type that [HB] had incorporated her 16–year–old child to sell marijuana. We would have objected to that. The cat's out of the bag, but at this point, if there's going to be any further questioning that relates to painting her and her character, then I would certainly like notice of that.

. . .

DEFENSE COUNSEL: When I mentioned earlier that I wanted to talk about the specifics surrounding her situation, I wanted to do that because I wanted to explain the fact that the deal that she got is exceptional relative to the things that were going on there; specifically, that she was using her 16–year–old son to sell drugs and the ultimate result is that she gets a dismissal of those charges. That is part and parcel of the circumstances surrounding it and why it becomes such a less understandable deal.

THE COURT: Well, you just stop here because there are certain things[,] such as you're talking about a 16–year–old son[,] that I have to take into account because they may be so bad that, even though they may have occurred, the prejudicial effect outweighs the possibility that they are an

---

3. The hearing was apparently prompted by an oral motion in limine made by the defense.

unreliable witness. That's really what we're here about with this other bad acts evidence.

Now, here we are. What you've said, essentially, is you knew that; and we've come in here, mid trial, with no 404(b) proffer so I can take it up. I thought you were just asking a foundational question when you said "One more question," but you basically wanted to get out the prejudicial matter and that's the problem that we have here.

Now, I am ruling that is improper. I will instruct the Jury—the only thing I can do right now, if you want a limiting instruction that they will disregard it—

The prosecution subsequently requested that the court issue a curative instruction.

[¶ 7] The court provided a proposed curative instruction to the parties outside the presence of the jury and asked if there were any objections. Appellant's counsel stated that he had no objections, but requested that a reference to "the Defendant" be changed to "Mr. Garner's attorney" to reflect that Appellant's attorney, rather than Appellant, had failed to disclose the planned inquiry regarding HB's son. The court made the change before issuing the following instruction to the jury:

> Ladies and Gentlemen of the Jury, testimony has just been elicited in cross-examination of [HB] to the effect that this witness used her 16–year–old son to sell marijuana. Generally, other bad acts that may have been committed by a witness are not admissible; and when they are admitted, they are subject to careful scrutiny and review by the Court because of the prejudicial effect they may have in the minds of the jury, such as to punish the witness because she's a bad person and because this information simply has no relevance to the case.
>
> In order to make sure that such evidence is used properly, it must be disclosed to the opposing Counsel and to the Court that it is planned to be used. Here, it was disclosed that the Defendants planned to inquire into the fact that [HB] received a withheld entry of conviction or a deferred prosecution under Wyoming Stat-

ute 7–13–301 in exchange for her trying to purchase drugs from the Defendant. The Defendant was allowed to examine on this point. What was not disclosed by Mr. Garner's attorney was that the witness may have allowed her 16–year–old son to sell drugs. It is extremely improper to do this. Accordingly, you are instructed that you are to disregard the testimony regarding the witness' 16–year–old son and you may not consider or use it for any purpose, including whether or not to believe this witness.

[¶ 8] At the close of the State's case, Appellant moved for judgment of acquittal on all of the charges. The district court granted the motion with respect to the conspiracy charge but denied the motion with respect to the two delivery charges. The jury subsequently found Appellant guilty on both counts. The court imposed consecutive sentences of 8 to 18 years for the convictions. This appeal followed.

### STANDARD OF REVIEW

[¶ 9] We review a district court's evidentiary rulings for an abuse of discretion.

Generally, decisions regarding the admissibility of evidence are entrusted to the sound discretion of the district court. We afford considerable deference to the district court's decision and, as long as a legitimate basis exists for the district court's ruling, it will not be reversed on appeal. Under the abuse of discretion standard, our primary consideration is the reasonableness of the district court's decision. The burden of establishing an abuse of discretion rests with the appellant.

If we find that the district court erred in admitting the evidence, we must then determine whether or not the error affected [the appellant's] substantial rights, providing grounds for reversal, or whether the error was harmless. The error is harmful if there is a reasonable possibility that the verdict might have been more favorable to [the appellant] if the error had never occurred. To demonstrate harmful error, [the appellant] must prove prejudice under circumstances which manifest inherent un-

fairness and injustice, or conduct which offends the public sense of fair play.

*Foster v. State*, 2010 WY 8, ¶ 4, 224 P.3d 1, 3–4 (Wyo.2010) (quoting *Proffit v. State*, 2008 WY 103, ¶ 12, 191 P.3d 974, 977–78 (Wyo. 2008)).

## DISCUSSION

[¶ 10] Appellant contends that the district court abused its discretion in excluding HB's testimony that her 16–year–old son helped her sell marijuana. He also takes issue with the curative instruction provided to the jury. Appellant contends that the district court erroneously relied on W.R.E. 404(b) in excluding testimony intended to demonstrate bias. He claims that HB's responses to defense counsel's inquiry regarding her son, and her responses to any follow-up questions, were admissible to impeach HB's credibility under W.R.E. 608(b).

■ [¶ 11] As a preliminary matter, we note that our review is limited to the district court's discretion with respect to the admissibility of testimony that was actually introduced at trial. Although Appellant contends that the district court erred in precluding any "follow-up questions" that defense counsel may have asked HB on cross-examination, the record clearly indicates that defense counsel had only "one more question" before asking HB whether her son helped her sell marijuana. Further, defense counsel indicated that he was "done" with this line of inquiry after the court sustained the prosecutor's objection to defense counsel's inquiry. Appellant made no offer of proof under W.R.E. 103(a) with regard to any additional testimony sought from the State's witness.[4] Consequently, we limit our review to the testimony reflected in the record. *See Person v. State*, 2004 WY 149, ¶ 20, 100 P.3d 1270, 1279 (Wyo. 2004).

■ [¶ 12] Appellant asserts that the testimony regarding HB's son was admissible under W.R.E. 608(b) to impeach HB's credi-

bility. Rule 608(b), however, does not govern all inquiries into a witness's credibility. The Rule provides:

(b) *Specific instances of conduct.*—Specific instances of the conduct of a witness, for the purpose of attacking or supporting his credibility, other than conviction of [a] crime as provided in Rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In *Lawrence v. State*, 2007 WY 183, ¶ 20, 171 P.3d 517, 523 (Wyo.2007), we explained that there is a "distinction between evidence that impeaches by proof of a witness's character or disposition for veracity, or the lack thereof, and evidence which establishes a lack of credibility through a showing of such things as bias or undue influence." Further, we noted that "the advisory committee's note to F.R.E. 608, which is substantively identical to the Wyoming provision, states that evidence of bias or interest is not an attack on the witness's character for truthfulness and, thus, the admission of such evidence is not governed by F.R.E. 608." *Id.* The evidence indicating that HB involved her 16–year–old son in the sale of marijuana was not probative of HB's character for truthfulness, and Appellant does not contend otherwise. The evidence was not admissible under W.R.E. 608(b).

■ [¶ 13] Instead, HB's testimony regarding her agreement to act as a confidential informant, to the extent that it shows a "relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party," is properly character-

---

4. Wyoming Rule of Evidence 103(a) provides, in pertinent part, as follows:

(a) *Effect of erroneous ruling.*—Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected, and

. . .

(2) Offer of Proof.—In case the ruling is one excluding evidence, the substance of the evidence was made known to the court by offer or was apparent from the context within which questions were asked.

ized as evidence of bias. *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984). Cross-examination intended to show bias is generally permitted by W.R.E. 607, which provides that "The credibility of a witness may be attacked by any party, including the party calling him." *See United States v. Abel*, 469 U.S. at 51, 105 S.Ct. at 468. However, a district court retains discretion under W.R.E. 403 and W.R.E. 611 to exclude evidence that is otherwise relevant. *Lawrence*, ¶ 20, 171 P.3d at 523; 3 Christopher B. Mueller & Laird C. Kirkpatrick, Federal Evidence § 6.75, at 504 (3d ed.2007). W.R.E. 403 provides as follows:

**Rule 403. Exclusion of relevant evidence on grounds of prejudice, confusion, or waste of time.**

Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence.

The discretion vested in a trial judge to exclude evidence under W.R.E. 403 is echoed in W.R.E. 611, which provides, in relevant part, as follows:

**Rule 611. Mode and order of interrogation and presentation.**

(a) *Control by court.*—The court shall exercise reasonable control over the mode and order of interrogating witnesses and presenting evidence so as to (1) make the interrogation and presentation effective for the ascertainment of the truth, (2) avoid needless consumption of time, and (3) protect witnesses from harassment or undue embarrassment.

(b) *Scope of cross-examination.*—Cross-examination should be limited to the subject matter of the direct examination and matters affecting the credibility of the witness. The court may, in the exercise of discretion, permit inquiry into additional matters as if on direct examination.

*See* Stephen A. Saltzburg et al., Commentary, Fed.R.Evid. 611, *available at* LEXIS USCS Fed. Rules Evid. R 611 (noting that "[Rule 611] implicitly provides for balancing similar to that set forth more explicitly by Rule 403").

[¶ 14] Although Appellant does not contend that his constitutional rights were infringed, we measure the district court's exercise of discretion against the right of cross-examination guaranteed by the Confrontation Clause. As we have previously stated:

The general rule that evidentiary decisions are within the sound discretion of the trial court applies to decisions made under W.R.E. 611(b). *Caterpillar Tractor Co. v. Donahue*, 674 P.2d 1276, 1285–86 (Wyo.1983); *Grabill v. State*, 621 P.2d 802, 814 (Wyo.1980). The exercise of that discretion must, however, be guided by recognized principles of law. One of those principles is that wide latitude should be permitted in the cross-examination of an adverse witness. *In re Morton's Estate*, 428 P.2d 725, 733 (Wyo.1967).

*Dysthe v. State*, 2003 WY 20, ¶ 19, 63 P.3d 875, 883 (Wyo.2003). We have also held, however, that the constitutional right to confrontation of witnesses is not absolute, but is subject to reasonable limitation pursuant to the trial court's discretion.

The primary right secured by the Confrontation Clause of the United States and Wyoming Constitutions is the right of cross-examination. *Hannon [v. State*, 2004 WY 8], ¶ 16, 84 P.3d [320,] 329 [(Wyo. 2004)] (citing *Davis v. Alaska*, 415 U.S. 308, 315, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). In order for there to be a violation of the right of confrontation, a defendant must show more than just a denial of the ability to ask specific questions of a particular witness. Rather, a defendant must show that he was prohibited "from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness ... 'to expose to the jury the facts from which jurors ... could appropriately draw inferences relating to the reliability of the witness.'" *Hannon*, ¶ 18, 84 P.3d at 330 (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 680, 106 S.Ct. 1431, 1436, 89 L.Ed.2d 674 (1986)). The Confrontation Clause guarantees a defendant an **"oppor-**

tunity for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Van Arsdall*, 475 U.S. at 679, 106 S.Ct. at 1435 (quoting *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S.Ct. 292, [294], 88 L.Ed.2d 15 (1985) (*per curiam* ) (emphasis in original)). A defendant's right to cross-examination of a witness is not unfettered, but is subject to the trial court's "discretion to reasonably limit cross-examination to prevent, among other things, questioning that is repetitive or of marginal relevance." *Hannon,* ¶ 22, 84 P.3d at [332] (quoting *United States v. DeSoto,* 950 F.2d 626, [629] (10th Cir. 1991)); *see also Olden v. Kentucky,* 488 U.S. 227, 232, 109 S.Ct. 480, 483, 102 L.Ed.2d 513 (1988) (*per curiam* ).

*Miller v. State,* 2006 WY 17, ¶ 8, 127 P.3d 793, 796 (Wyo.2006).

[¶ 15] Appellant contends that the testimony relating to HB's son was evidence of bias because, considering the gravity of her offense, it shows that she received an "exceptional" deal from the prosecution. At this point in the trial, however, HB had been cross-examined about her plea agreement by counsel for Appellant and by counsel for Ms. Earley. During her testimony, the jury was repeatedly reminded that HB had avoided a felony conviction, for which she faced 30 years in prison, by agreeing to act as a confidential informant. The jury was also informed that HB's husband had received favorable treatment as a result of her work as an informant. In addition, when HB was questioned about the circumstances of her arrest, she testified that she and her husband were working together to sell drugs, that they had been pulled over the day prior to her arrest and that law enforcement had found half a pound of marijuana in their vehicle, and that she was arrested the next day for selling marijuana to a confidential informant. Accordingly, the record clearly reveals that Appellant was allowed to develop his claim of bias based on the State's agreement with HB, and was also permitted to draw the jury's attention to the offense prompting that agreement.

[¶ 16] The district court appropriately determined that HB's testimony as to her agreement with the State was admissible to demonstrate potential bias. However, the decision to exclude certain details of HB's criminal conduct was also within the district court's discretion under W.R.E. 403 and 611. The district court's decision to exclude the testimony related to HB's son was based on the determination that the evidence was not relevant and that the danger of unfair prejudice to the State outweighed any marginal tendency to show that HB was biased. Despite the district court's reference to Rule 404(b), which governs the admissibility of prior bad acts for specifically enumerated purposes, the district court's analysis was consistent with the balancing of prejudice and probative value that is explicit under Rule 403, and the similar balancing test implicit under Rule 611. Considering the entirety of HB's testimony, we are unable to conclude that the district court abused its discretion.

[¶ 17] Appellant also contends that the district court erred in instructing the jury that it was improper for Appellant's counsel to elicit testimony relating to HB's son without previously disclosing the planned inquiry to opposing counsel and the court. Appellant, however, when given the opportunity at trial, did not object to the district court's curative instruction. As a result, we review the instruction for plain error. *Jones v. State,* 2011 WY 114, ¶ 10, 256 P.3d 527, 532 (Wyo.2011). To demonstrate plain error, an appellant must show: 1) the record clearly reflects the incident urged as error; 2) a violation of a clear and unequivocal rule of law; and 3) that the appellant was materially prejudiced by the denial of a substantial right. *Id.,* ¶ 15, 256 P.3d at 533.

[¶ 18] Appellant has made no attempt to present a plain error analysis with regard to the district court's curative instruction. Rather, Appellant confines his discussion of prejudice to the district court's decision to exclude HB's testimony, which he contends was "not harmless" because "[t]he case really did depend to a large degree upon the truthfulness of HB." As set forth above, however, the district court did not abuse its discretion

in excluding HB's testimony. Appellant makes no argument that he was prejudiced by any error in the court's curative instruction, and, as a result, he has failed to carry his burden of demonstrating that any defect in the curative instruction constitutes plain error.

[¶ 19] Finally, Appellant claims that insufficient evidence was presented at trial to support his convictions for delivery of a controlled substance. He contends that the weight accorded to the evidence at trial, including the tape recordings of the controlled buys, depended to a large degree on the credibility of HB, and that "Since HB's credibility was not adequately tested, it cannot be said that any rational trier of fact could have found all the elements of the crimes." He concedes, however, that "If HB was a credible witness, then there would be sufficient evidence to sustain the convictions."

[¶ 20] We must reject Appellant's claim that there was insufficient evidence to support the convictions. As we have often repeated, our standard of review for determining whether evidence is sufficient to sustain a conviction does not permit us to reweigh evidence or re-examine the credibility of witnesses:

> [W]e must determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. When considering a claim of the sufficiency of the evidence, we review that evidence with the assumption that the evidence of the prevailing party is true, disregard the evidence favoring the unsuccessful party, and give the prevailing party the benefit of every favorable inference that we may reasonably draw from the evidence. We will not reweigh the evidence nor will we re-examine the credibility of the witnesses.

*Ewing v. State*, 2007 WY 78, ¶ 11, 157 P.3d 943, 946 (Wyo.2007). Consequently, we must reject Appellant's invitation to engage in the credibility determination inherent in his sufficiency of the evidence analysis. In light of testimony offered by HB, her husband, the DCI agent who coordinated the controlled buy, and personnel from the state crime lab, in addition to the exhibits introduced at trial, which included the tape recording of the transaction, the records of HB's text messages and phone calls to Appellant, a photocopy of the controlled buy funds, and the laboratory report confirming that the substance purchased from Appellant was methamphetamine, we find ample evidence to support Appellant's convictions.

[¶ 21] Affirmed.