# THE SUPREME COURT, STATE OF WYOMING

## 2024 WY 125

OCTOBER TERM, A.D. 2024

November 22, 2024

MATTHEW JUSTIN OLSON,

Appellant
(Defendant),

v.

THE STATE OF WYOMING,

Appellee
(Plaintiff).

S-23-0176, S-24-0103

*Appeal from the District Court of Uinta County*
*The Honorable James C. Kaste, Judge*

*Representing Appellant:*

*Office of the State Public Defender: Brandon Booth, Wyoming State Public Defender\*; Kirk A. Morgan, Chief Appellate Counsel; H. Michael Bennett, Senior Assistant Appellate Counsel.*

*Representing Appellee:*

*Bridget Hill, Attorney General; Jenny L. Craig, Deputy Attorney General; Kristen R. Jones, Senior Assistant Attorney General; Donovan Burton, Assistant Attorney General.*

*\*An Order Substituting Brandon Booth for Ryan Roden was entered on October 10, 2024.*

*Before FOX, C.J., and BOOMGAARDEN, GRAY, FENN, and JAROSH, JJ.*

**NOTICE: This opinion is subject to formal revision before publication in Pacific Reporter Third. Readers are requested to notify the Clerk of the Supreme Court, Supreme Court Building, Cheyenne, Wyoming 82002, of any typographical or other formal errors so that correction may be made before final publication in the permanent volume.**

**FENN, Justice.**

[¶1]   A jury convicted Matthew Justin Olson of conspiracy to commit first-degree murder.  He appeals claiming the district court erred when it ruled the State could introduce evidence under Rule 404(b) of the Wyoming Rules of Evidence (W.R.E.) that he had other "serious" charges pending at the time of the alleged conspiracy. W.R.E. 404(b) (LexisNexis 2023).  We affirm.

## ISSUE

[¶2]   Mr. Olson raises one issue which we rephrase as follows: Did the district court's pretrial ruling regarding the introduction of evidence under W.R.E. 404(b) affect Mr. Olson's substantial right to a fair trial when the challenged evidence was never admitted at trial?

## FACTS

[¶3]   In April 2021, Matthew Olson was incarcerated in the Platte County Detention Center in Wheatland, Wyoming, pending trial on a federal charge of being a felon in possession of a firearm.  During this same time, Mr. Olson also had pending state charges for multiple counts of domestic violence against his ex-wife, SK, in Uinta County.  SK was an important witness in these pending cases.

[¶4]   While in the Platte County Detention Center, Mr. Olson shared a cell with Danny Hendershott, who was also known as "Sinner."  Mr. Olson asked Mr. Hendershott to "[e]liminate a problem" he had with SK by "kill[ing] the chick."  Mr. Hendershott had gang affiliations and the connections to carry out the murder.

[¶5]   In exchange for "helping" Mr. Olson with SK, Mr. Olson agreed to give Mr. Hendershott a government stimulus check Mr. Olson had received that was currently in possession of his girlfriend, Shannon Ambriola.  The stimulus check was made payable to Mr. Olson and SK.  Mr. Hendershott arranged for Ms. Ambriola to send the check to his sister in Oregon, who would then cash the check and send the proceeds to Mr. Hendershott.  Mr. Hendershott's sister received the check from Ms. Ambriola, but she never cashed it.

[¶6]   Although Mr. Hendershott originally intended to go through with the murder-for-hire plot, he changed his mind after he was transferred to another facility in Nebraska.  Mr. Hendershott reported the plot to law enforcement, and the information was passed onto the Federal Bureau of Investigation (FBI), who in turn contacted the Bureau of Alcohol, Tobacco, Firearms, and Explosives (ATF).  ATF agents warned SK her life might be in danger and retrieved the stimulus check from Mr. Hendershott's sister.

1

[¶7]  A few days later, an undercover ATF agent, who was pretending to be a hitman, contacted Ms. Ambriola saying he was a "friend of a friend."  He attempted to get Ms. Ambriola to give him additional information about SK that would help him carry out the murder.  During this call, the agent asked Ms. Ambriola to find out if Mr. Olson still wanted SK killed.  After speaking with Mr. Olson, Ms. Ambriola called the agent later that day and told him Mr. Olson had decided to "hold off" or "postpone" because there was too much heat on him at the moment.  She also told the agent he could keep $500 of the proceeds from the stimulus check for his "troubles" and asked him to return the rest.

[¶8]  The State charged Mr. Olson with one count of conspiracy to commit first-degree murder.  Before trial, the State filed a notice of intent to offer evidence under W.R.E. 404(b).  The State wanted to introduce evidence showing Mr. Olson had been charged with numerous other crimes including: multiple acts of domestic violence against SK; being a felon in possession of a firearm; and aggravated assault and witness intimidation against SK.  The State argued this evidence was admissible to show Mr. Olson's motive for wanting to kill SK, and it would be "virtually impossible" to address the conspiracy charge without explaining why he was incarcerated with Mr. Hendershott.  Mr. Olson objected to the introduction of any of this evidence.

[¶9]  After holding a hearing and conducting the analysis required by *Gleason v. State*, 2002 WY 161, ¶ 27, 57 P.3d 332, 342–43 (Wyo. 2002), the district court found some of the evidence the State wanted to use was admissible under W.R.E. 404(b).  However, to limit the potential prejudicial effect of this evidence, the district court limited the State to "identifying that at times relevant to this charge, Defendant Olson had four serious charges pending against him[,] and [SK] was an important witness to those charged offenses."

[¶10]  After a three-day trial, the jury found Mr. Olson guilty of conspiracy to commit first-degree murder.  The district court sentenced Mr. Olson to life as a matter of law.  Mr. Olson timely appealed his conviction.  While that appeal was pending, Mr. Olson filed a motion for a new trial under Rule 21 of the Wyoming Rules of Appellate Procedure (W.R.A.P.), claiming his trial counsel was ineffective. W.R.A.P. 21 (LexisNexis 2023).  The district court denied that motion, and Mr. Olson timely appealed that order (appeal S-24-0103).  We consolidated the appeals.  Mr. Olson does not raise any arguments related to the denial of his W.R.A.P. 21 motion.  He only challenges the district court's ruling on the admissibility of the W.R.E. 404(b) evidence.

## DISCUSSION

[¶11] Mr. Olson objected to the State's introduction of the proposed W.R.E. 404(b) evidence.  Accordingly, we review the district court's ruling for an abuse of discretion. *Freer v. State*, 2023 WY 80, ¶ 11, 533 P.3d 897, 901 (Wyo. 2023) (citing *Anderson v. State*, 2022 WY 119, ¶ 11, 517 P.3d 583, 588 (Wyo. 2022)).  "Evidentiary rulings are within the sound discretion of the trial court and include determinations of the adequacy of

2

foundation and relevancy, competency, materiality, and remoteness of the evidence." *Id.* (quoting *Anderson*, ¶ 11, 517 P.3d at 588). We will only disturb the district court's determination if the court clearly abused its discretion and could not have reasonably concluded as it did. *Id.* (quoting *Anderson*, ¶ 11, 517 P.3d at 588). Mr. Olson bears the burden of establishing an abuse of discretion. *Id.* (citing *Anderson*, ¶ 15, 517 P.3d at 589).

[¶12] "If we find that the district court erred in admitting the evidence, we must then determine whether or not the error affected the appellant's substantial rights, providing grounds for reversal, or whether the error was harmless." *Garner v. State*, 2011 WY 156, ¶ 9, 264 P.3d 811, 816 (Wyo. 2011) (quoting *Foster v. State*, 2010 WY 8, ¶ 4, 224 P.3d 1, 4 (Wyo. 2010)); W.R.E. 103(a) (LexisNexis 2023) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected . . . ."); W.R.A.P. 9.04 (LexisNexis 2023) ("Any error, defect, irregularity or variance which does not affect substantial rights shall be disregarded by the reviewing court."). "An error is deemed prejudicial when there is a reasonable probability that, in the absence of the improper evidence, the verdict would have been more favorable to the appellant." *Anderson,* ¶ 27, 517 P.3d at 592 (quoting *Swett v. State*, 2018 WY 144, ¶ 12, 431 P.3d 1135, 1140 (Wyo. 2018)). Mr. Olson bears the burden of establishing the error was prejudicial. *Munda v. State*, 2023 WY 90, ¶ 21, 535 P.3d 523, 528 (Wyo. 2023) (citing *Griggs v. State*, 2016 WY 16, ¶ 123, 367 P.3d 1108, 1142 (Wyo. 2016)).

[¶13] On appeal, Mr. Olson admits "it was clearly relevant that he was incarcerated with Mr. Hendershott." Likewise, he admits his alleged motive for wanting to kill SK to prevent her from testifying against him was relevant. However, Mr. Olson argues the district court abused its discretion when it ruled the State could categorize the charges he was facing at the time of the underlying conspiracy as "serious charges." He contends this characterization created "an overwhelming likelihood of the jury drawing the improper inference that Mr. Olson had a propensity for violence, serious violence." He asserts the district court inadvertently placed an undue emphasis on the "punishment aspect" of the pending crimes and "increased the likelihood of conveying to the jury Mr. Olson's propensity to commit serious crimes, just like the one for which he was on trial." He claims the district court could have prevented any improper inuendo simply by limiting the State to presenting evidence that Mr. Olson had "pending 'charges' in Uinta County."

[¶14] Although Mr. Olson had an obligation under W.R.A.P. 7.01(f) (LexisNexis 2023)[1] to properly cite to the record in his brief to enable us to identify where the challenged evidence was actually admitted at his trial, he failed to do so. Our review of the record

---

[1] W.R.A.P. 7.01(f) requires an appellant's brief to set out the facts relevant to the issues presented for review "with citations to page numbers in the designated record on appeal . . . ." Mr. Olson phrased his issue for review as: "The district court abused it discretion by allowing 404(b) evidence of "serious crimes" to be introduced at trial." Therefore, he should have included citations to the record where this evidence was introduced at trial.

shows the word "serious" was never actually introduced during trial or mentioned in front of the jury. The State limited the discussion of Mr. Olson's other pending charges to the following questions asked during Sergeant Kerby Barker's testimony:

> Q. And in the time frame in question do you have any knowledge about any concerns that Mr. Olson would have about his ex-wife? Yes or No?
> A. Yes.
> Q. And who is his ex-wife?
> A. His ex-wife is [SK].
> Q. And in relation to [SK], was she to serve a purpose in anything that you were aware of that was related to Mr. Olson?
> A. Yes.
> Q. And what was that purpose?
> A. She would have been a very important witness.
> Q. And to your knowledge, was she a witness related to anything with Mr. Olson?
> A. Yes.
> Q. And specifically was there one or more issues?
> A. There were multiple issues.
> Q. Do you recall how many that she was a witness to? And if you don't recall --
> A. There was cases and charges. I want to say four to six.
> Q. Okay. And was [SK] important to those cases?
> A. Yes.

[¶15]   To establish foundation for certain exhibits, another witness testified he was looking into Mr. Olson in a "non-related matter," but he did not elaborate on those charges or use the word "serious." Similarly, Ms. Ambriola testified Mr. Olson was incarcerated in April 2021, and SK was a witness against him, but she did not say what his charges were, nor did she use the word "serious." During cross-examination, Ms. Ambriola testified the charges for which Mr. Olson was incarcerated had nothing to do with murder. The only time the word "serious" came up at the trial was during Mr. Olson's motion for judgment of acquittal, where he mistakenly claimed Sergeant Barker had testified Mr. Olson was facing "very serious" charges. As set forth above, Sergeant Barker testified Mr. Olson had pending cases and charges, without categorizing them as serious.

[¶16]   Mr. Olson's argument focuses on the prejudicial effect the word "serious" could have had on the jury if it was used at trial. His brief does not explain how any of his substantial rights were affected by the district court's pretrial W.R.E. 404(b) ruling when the State did not actually characterize his charges as serious at trial. Mr. Olson concedes it would have been appropriate for the district court to limit the State to presenting evidence he was facing pending charges in Uinta County. That is exactly the evidence the State

4

presented. Our review of the record indicates the pending charges against Mr. Olson were never categorized as "serious charges" during the trial, and the district court's pretrial ruling had no impact on Mr. Olson's trial and did not affect his substantial rights. The evidence at trial was limited in precisely the way Mr. Olson proposes in his brief. Consequently, Mr. Olson cannot meet his burden of showing there is a reasonable probability he would have received a more favorable verdict absent the district court's pretrial ruling. Accordingly, even if Mr. Olson could show the district court's pretrial ruling was erroneous, the error was harmless and cannot constitute grounds for reversal. *See Garner,* 2011 WY 156, ¶ 9, 264 P.3d at 816 (quoting *Foster*, 2010 WY 8, ¶ 4, 224 P.3d at 4); W.R.E. 103(a); W.R.A.P. 9.04. We affirm Mr. Olson's conviction.

## **CONCLUSION**

[¶17] Although the district court ruled the State could categorize Mr. Olson's pending charges as "serious," this evidence was never admitted at trial. Because the evidence was not admitted, Mr. Olson failed to establish his substantial rights were affected in any way by the district court's pretrial W.R.E. 404(b) ruling. Therefore, he failed to establish any grounds to reverse his conviction. Affirmed.